IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

RANDY GAMEL-MEDLER,              )
                                )
                     Plaintiff, )
vs.                             )        NO. CIV-17-0830-HE
                                )
JONITA PAULS a/k/a JONITA       )
JACKS, *et al.,*                )
                    Defendants. )

## ORDER

Plaintiff Randy Gamel-Medler, the former Town Clerk for the Town of Hitchcock,

Oklahoma, filed this action alleging civil rights violations under 42 U.S.C. §§ 1983 and

1985. He asserts claims against various Hitchcock town officials and residents and

against Blaine County and several of its officials. He also asserts claims under state law.

Defendants have filed three motions to dismiss.[1]

When considering whether a plaintiff's claim should be dismissed under Rule

12(b)(6), the court accepts all well-pleaded factual allegations as true and views them in

the light most favorable to the plaintiff as the nonmoving party. S.E.C. v. Shields, 744

F.3d 633, 640 (10th Cir. 2014). All that is required is "a short and plain statement of the

claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). The complaint

must, though, contain "enough facts to state a claim to relief that is plausible on its face"

and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly,

550 U.S. 544, 570, 555 (2007). "'A claim has facial plausibility when the plaintiff pleads

---

[1] *Defendants Almaguer and Robertson filed one motion, defendants Jonita Pauls, Joel Pauls Renita Pauls, Meradith Norris, Kenny Meier and Patsy Meier filed a second motion and the remaining motion was filed by defendant Edsall.*

factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Shields, 744 F.3d at 640 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

Background

Plaintiff's claims are based on events that allegedly occurred while plaintiff served as the Town Clerk for Hitchcock.  Plaintiff alleges he is a gay man with an African-American son, and that defendants alleged actions were due to those circumstances.  As pleaded in the second amended complaint ("complaint"), the incidents that led to this lawsuit began in September 2016.  At a town meeting one of the trustees, defendant Meradith Norris,[2] upon learning plaintiff had an African American son, allegedly stated "'What's going to happen when your house burns down and we don't send out the fire trucks?'"  Doc. #21, p. 3, ¶ 8.  These comments were allegedly made in the presence of the Mayor, defendant Rick Edsall, and other town trustees.  According to the complaint, that scenario is approximately what happened,[3] after a series of discriminatory incidents took place which involved the defendants.  Plaintiff alleges that he was assaulted and harassed and that the Sheriff and his department refused to take action.  He alleges that criminal charges were filed against him after an altercation involving defendant Jacks, even though he was the victim.

_____

[2] *Ms. Norris' name is spelled Meradith in the caption, but Meredith in the body of the complaint.  As she spells it Meradith in her motion, the court has used that spelling.*

[3] *According to the complaint, the fire department did come to plaintiff's house, but because it "did nothing for an extended time . . .  Plaintiff's home was burned to the ground."  Doc. #21, p. 6, ¶18.*

In Count I, plaintiff asserts an equal protection claim under § 1983 against Sheriff Tony Almaguer, Undersheriff David Robertson and Blaine County ("County").  In Count II, plaintiff asserts a §1985(3) conspiracy claim against all defendants based on an alleged denial of his equal protection rights.  In Count III, plaintiff asserts a state law civil conspiracy claim against all defendants, based on him allegedly being forced to move, along with his son, from the Town of Hitchcock.  Finally, in Count IV, plaintiff asserts assault, aiding and abetting an assault, and intentional infliction of emotional distress claims against defendants Jonita Pauls Jacks, Joey Pauls, Renita Pauls,[4] Kenny Meier and Patsy Meier.

<u>Analysis</u>

## Count I[5]

In Count I plaintiff alleges that the Sheriff and Undersheriff denied him the equal protection of the law by "refusing to accept reports of criminal activities against" him and his son, "while at the same time accepting reports and initiating prosecution against the Plaintiff."[6]  Doc. #21, p. 7, ¶26.  He identifies the Sheriff as the "decision maker and policymaker regarding law enforcement in Blaine County" and the person who is "in charge of his Undersheriff and the deputies." *Id.* at ¶24.  Plaintiff asserts that the Sheriff's

---

[4] *Joey and Renita Pauls are the parents of Jonita Pauls Jacks.  Doc. #21, p. 4, ¶13.*

[5] *Although defendants argue in their motion that plaintiff insufficiently alleges that he was discriminated against as a "class-of-one," they acknowledge in their reply brief that it is apparent he does not intent to proceed under such a theory.  See Doc. #28, pp. 4-5.*

[6] *Defendant Edsall discusses plaintiff's § 1983 claim in his motion to dismiss, but that claim is asserted only against defendants Almaguer, Robertson and Blaine County.*

"decision to deny equal protection of the criminal laws to Plaintiff" was based "on bias resulting from Plaintiff's sexual orientation and the race of Plaintiff's son." *Id*.  He alleges that both the Sheriff and Undersheriff carried out this "policy," and that it "represents the policy of Blaine County, Oklahoma." *Id*.

Defendants Almaguer and Robertson initially argue that plaintiff's § 1983 claim should be dismissed because plaintiff "simply has no constitutionally protected right to file a police report or to have the police conduct a criminal investigation." Doc. #22, p. 10. They recognize, though, that despite the absence of a "'general constitutional right to police protection, the state may not discriminate in providing such protection.'" Price-Cornelison v. Brooks, 524 F.3d 1103, 1110 (10th Cir. 2008) (quoting Watson v. City of Kansas City, Kan., 857 F.3d 690, 694 (10th Cir. 1988)).  However, defendants contend plaintiff has failed to plead that defendants Almaguer and Robertson were motivated by any racial or other class-based discriminatory intent which is required to state an equal protection claim based on discriminatory enforcement.

Insofar as plaintiff seeks to assert a § 1983 claim against the County, defendants assert that his factual allegations are insufficient to support "an inference of the adoption of any such [discriminatory]' policy by the Defendant Sheriff." Doc. #22, p. 12. Defendants essentially contend that all plaintiff has alleged is misconduct by defendant Robertson. They assert plaintiff has not alleged facts "giv[ing] rise to a reasonable inference that the Defendant Sheriff adopted a discriminatory policy." *Id*. at p. 13.

Plaintiff alleges in the complaint that in early May 2017, while he was performing his duties as Town Clerk, defendant Jonita Pauls Jacks:

4

". . . tried to enter [plaintiff's] truck, and when Plaintiff locked the door, started shaking the truck thus committing an assault and battery. Jonita Pauls Jacks called Plaintiff a "f***ing queer. I'm going to grab your little boy, rip his nigger head off, and shit down his throat."

Doc. #21, p. 4, ¶11.  Plaintiff asserts that when he then attempted to file a report about the incident with Sheriff Almaguer, the sheriff refused to take it, telling him that Mayor Edsall, "had already been in."  *Id.* at ¶12.  Deputy Sheriff Robertson[7] allegedly remarked "'That's just how they how they [sic] are out there and it's free speech.'"  *Id*. at ¶12.  Plaintiff asserts that, even though he was the victim in the incident with Jacks, criminal charges based on the altercation with her were filed against the plaintiff in early June, soon after his house burned down.

Plaintiff also alleges other refusals by the Sheriff's office to provide protection. One alleged incident involved a sign which was placed across from the post office where plaintiff and his son walked and which read: "'The town clerk is a f*ucking queer.'"  *Id*. at ¶14.  Plaintiff alleges that when he called the Sheriff to make a report "the Sheriff said the sign was 'free speech' and refused to take any action."  *Id*. at ¶15.  Plaintiff alleges that, on another occasion, the Undersheriff would not allow him to file a police report after defendant Kenny Meier attempted to drive a friend of plaintiff's, who had been with plaintiff while he was working, off the road.  Finally, plaintiff asserts that, when the press and public interest groups questioned defendant Robertson's actions, including charging plaintiff for threatening the entire Town of Hitchcock "on the day while Plaintiff's house

---

[7] *Although not completely clear, it appears plaintiff refers to defendant Robertson as both Deputy Sheriff and Undersheriff.  See Doc. #21, pp. 4,6-7 ¶¶12, 21.*

was being burnt down and during the course of the fire," defendant Robertson responded: "'You know Medler is gay, right?'" *Id*. at ¶¶ 21, 22.

Plaintiff has alleged facts indicating the Sheriff repeatedly refused to allow him to file police reports, while his Department afforded protection to a heterosexual individual who had allegedly assaulted him. He also has alleged facts from which it can plausibly be inferred that the Sheriff and Undersheriff's alleged discriminatory treatment was due to plaintiff being gay. For example, animus can reasonably be inferred with respect to Sheriff Almaguer by his alleged refusal to take any action in response to the "f*ucking queer" sign the Meiers allegedly posted. It can also be inferred from Undersheriff Robertson's response to the press when questioned about his actions. Because the Sheriff is the final policymaker regarding law enforcement in Blaine County, he can establish official policy or custom for the County. *See* Lopez v. LeMaster, 172 F.3d 756, 763 (10th Cir. 1999) (sheriff's failure to provide adequate staffing and monitoring of inmates could constitute a policy attributable to the county when, under Oklahoma law, a county sheriff is in charge of the jail and its prisoners); (Dixon v. Bd. of Cty. Comm'rs of Cty. of Okla., 2015 WL 5839364 at *3 (W.D. Okla. Oct. 7, 2015) (Administrator's termination decisions "considered County policy sufficient to hold the County liable").

In Price-Cornelison, 524 F.3d at 1109-14 the Tenth Circuit considered whether, in the summary judgment context, a plaintiff had adequately shown that a sheriff had deprived her of equal protection of the law when, because she was a lesbian domestic violence victim, he refused to enforce a protective order. The court concluded the plaintiff had met her burden. It noted that the County have a policy of providing lesbian victims of domestic

violence with less police protection than other domestic violence victims, and that "at the time [the sheriff] refused to enforce Price-Cornelison's permanent protective order, [the sheriff] was aware that she is a lesbian; he had previously mentioned this fact to several people." *Id*. at 1113.  Price-Cornelison supports the conclusion that plaintiff has sufficiently pleaded a § 1983 equal protection claim against defendants Almaguer and Robertson, individually, and the County. *See id*. at 1109-14.  Their motion will therefore be denied with respect to Count I.

Count II

In Count II, plaintiff alleges defendants' actions were contrary to 42 U.S.C. §1983(3).[8]  He alleges their actions "were motivated by a common desire and part of a common plan and conspiracy to deny to Plaintiff and his child the equal protection of the laws, to injure him or his property for lawfully attempting to enforce his rights and those of his son to equal protection of the law."  Doc. 21, p. 8, ¶31.  He further alleges that the "conspiracy and common object of the conspirators is shown by the commonly announced object of forcing the Plaintiff to move out of town, and carried out by the acts and statements of each Defendant, described."  *Id*. at pp. 8-9, ¶33.

The essential elements of a § 1985(3) claim are: "(1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of

---

[8] *Plaintiff states in the complaint that he is asserting both a violation of 42 U.S.C. § 1985(2) and § 1985(3).  However, § 1985(2) pertains to conspiracies intended to obstruct justice by such means as intimidating a party, witness or juror.  Plaintiff has not pleaded such a deterrence claim. Rather, he has pleaded, if anything, a § 1985(3) conspiracy.*

the conspiracy; and (4) an injury or deprivation resulting therefrom." [9] <u>Tilton v. Richardson</u>, 6 F.3d 683, 686 (10th Cir. 1993). All defendants make essentially the same argument in support of their motions to dismiss this claim – that plaintiff has not "alleged[d] facts sufficient 'to give rise to the inference that [defendants] conspired.'" <u>Brever v. Rockwell Int'l Corp.</u>, 40 F.3d 1119, 1127 (10th Cir. 1994) (quoting <u>Abercrombie v. City of Catoosa</u>, 896 F.2d 1228, 1231 (10th Cir. 1990)).[10] Plaintiff responds that the complaint "sets out a detailed sequence of events tied together by common professions of racial and sexual orientation hostility, threats of and acts of violence and a common theme of running the Plaintiff out of town." Doc. #26, p. 4. He argues, citing <u>Snell v. Tunnell</u>, 920 F.2d 673 (10th Cir. 1990), that all he must show to demonstrate the existence of a conspiracy is that "there was a single plan, the essential nature and general scope of which was known to each person who is to be held responsible for its consequences." <u>Snell</u>, 920 F.2d at 702.

More specifically, with respect to the Pauls and Meier defendants, while plaintiff admits that he "cannot *at present* plead a meeting between the [two] families," Doc. #26, p. 5, he asserts that he has "pled a sequence of events which is internally consistent with the theme announced by the Defendants of running the Plaintiff out of town." *Id.* Plaintiff

---

[9] *As plaintiff points out in his response, none of the defendants argue that the protections of §1985(3) are limited to conspiracies driven by racial animus.*

[10] *Defendants Almaguer and Robertson also argue that plaintiff's § 1985(3) conspiracy claim fails for lack of allegations that there was some class-based invidiously discriminatory animus driving the conspirators' actions. However, the discriminatory animus which the court found plaintiff pleaded in support of his §1983 equal protection claim against these defendants supports his § 1985(3) claim against them as well.*

claims that "the pleadings show express threats and acts of violence which [the Sheriff and Undersheriff] tacitly approved and, at least through the UnderSheriff, encouraged by telling Plaintiff to get out of town." Doc. #27, p. 9 n.6. And, as for the Mayor, plaintiff contends he "twice intervened to discourage the Sheriff's office from taking action." Doc. #25, p. 6.

As the Tenth Circuit noted in <u>Brever,</u> that the Supreme Court has recognized that even though a plaintiff may have no knowledge of a specific agreement between alleged conspirators, a sequence of events may be sufficient to support an inference "that the [conspirators] had a "meeting of the minds."" <u>Brever</u>, 40 F.3d at 1127 (quoting <u>Adickes v. S.H. Kress and Co.</u>, 398 U.S. 144, 157 (1970)). So the question here is whether the complaint alleges only isolated incidents or statements, as was the situation in <u>Abercrombie</u>, 896 F.2d at 1230-31, or has "clearly allege[d] actions by two or more persons acting in concert." <u>Brever</u>, 40 F.3d at 1126. Recognizing that "the nature of conspiracies often makes it impossible to provide details at the pleading stage and ... the pleader should be allowed to resort to the discovery process and not be subject to dismissal of his complaint," <u>Hogan v. Winder</u>, 762 F.3d 1096, 1114 (10th Cir. 2014).[11]

Viewing the alleged facts in the light most favorable to the plaintiff, the court concludes plaintiff pleaded facts sufficient to withstand a motion to dismiss. The complaint, taken as a whole, sufficiently alleges actions by two or more persons acting in concert with county law enforcement to force plaintiff to leave Hitchcock. It is true that

---

[11] *While <u>Abercrombie,</u> <u>Brever</u> and <u>Hogan</u> involved conspiracy claims under 42 U.S.C. §1985(2), the conspiracy element is the same under both sections of the statute.*

plaintiff does not allege that all defendants met together at certain times and places. However, the "sequence of events" pleaded is "sufficient to support an inference of a "meeting of the minds" between the defendants.   The sequence began with Meradith Norris's alleged remark upon learning plaintiff had an African American son-- "what's going to happen when your house burns down and we don't send out the fire trucks."  It continued through May 28, 2017, when plaintiff allegedly reported a burglary in progress at his home.  The complaint alleges that the fire department, though only a block away, did not respond for an extended period of time and that plaintiff's house burned down as a result.  The complaint alleges the Meiers and Joey Pauls watched, and the Mayor and his family also observed while sitting in their lawn chairs, without "offering any aid or assistance."[12]  Doc. #21, p. 6, ¶20.  In addition to those two events, plaintiff has pleaded facts relating to comments from various persons or otherwise from which it can plausibly be inferred that defendants reached an agreement to drive plaintiff and his son out of Hitchcock.  One deputy sheriff, defendant Robertson, allegedly told plaintiff: "My best advice to you, is to tell you and your son to leave."  Doc. #21, p. 5, ¶16.  Another, Deputy Kissimee, is alleged to have told him: "These people are serious. They're going to kill you, they're going to kill your son, and they're going to burn your house down."  And the town mayor, defendant Edsall, also allegedly attempted to dissuade county law enforcement from assisting the plaintiff after he and a friend were involved in an altercation with the

_____

[12] *The court recognizes, as the Mayor points out in his motion, that he was not obligated as either a private citizen or as the town Mayor, to fight a fire.  Doc. #23, p. 6.  However, for present purposes the question is whether those alleged facts circumstantially contribute to a conclusion that the parties conspired.*

Meiers.  Plaintiff claims he stated: "'this is just how they behave, there is no reason for the Sheriff to be there.'" *Id.*

Accepting plaintiff's factual allegations as true, as the court must at this stage of the litigation,[13] they are enough to "nudge [plaintiff's § 1983(3) conspiracy] claim[] across the line from conceivable to plausible." Twombly, 550 U.S. at 570.  Defendants' motions to dismiss will be denied with respect to Count II.

Count III

In Count III, plaintiff asserts a civil conspiracy claim under Oklahoma law.  The complaint alleges that defendants conspired to force plaintiff and his son to move from Hitchcock because of plaintiff's sexual orientation and his son's race.  Defendants are alleged to have engaged in concerted acts of intimidation or violence to attain their objective, including the various allegations discussed above.

To establish a state law civil conspiracy claim, plaintiff must show that two or more persons acted in concert "to do an unlawful act, or to do a lawful act by unlawful means." Brock v. Thompson, 948 P.2d 279, 294, (Okla. 1997), *as corrected* (Apr. 3, 1998)

Defendants Almaguer and Robertson contend plaintiff has failed to state in the complaint whether defendants were acting within the scope of their employment at the time of the alleged violations. If they were, defendants assert, they are immune from suit under the Oklahoma Governmental Tort Claims Act ("GTCA"), 51 Okla. Stat. §§151-171. Further, they contend that plaintiff's claim against defendant Almaguer in his official

---

[13] *The court cannot consider materials extraneous to the complaint, such as the classified ad attached as Exhibit 1 to the motion to dismiss filed by the Pauls, Norris and Meiers defendants.*

capacity is improper as that is, in effect, a suit against the County. To the extent plaintiff is alleging they were acting outside the scope of their employment, defendants Almaguer and Robertson argue that he has not alleged sufficient facts demonstrating a civil conspiracy – that they conspired and acted in concert with the other codefendants to run plaintiff and his son out of Hitchcock. Defendants Pauls, Norris and Meiers assert plaintiff has failed to plead sufficiently the requirements that they acted in concert or to accomplish a specific object. Defendant Edsall's arguments parallel those of the Sheriff and Undersheriff – to the extent he is sued because of acts taken "within the scope of his very limited authority as mayor," he is entitled to immunity. Doc. #23, p. 8. Otherwise, he asserts, plaintiff has "not alleged a single fact that he did conspire with anybody to do anything to anyone." *Id*. at pp. 8-9. Plaintiff essentially reasserts the same arguments he advanced in support of his § 1985(3) conspiracy claim.

To the extent plaintiff has asserted a state law conspiracy claim against defendant Almaguer or defendant Edsall in their official capacities, he has sued the wrong entity and the claim will be dismissed. *See* Speight v. Presley, 203 P.3d 173, 179 (Okla. 2008) ("Designating an employee in his or her official capacity as a named defendant for this type of claim is improper under the GTCA."); Benshoof v. Niles, 380 P.3d 902, 906 (Okla.Civ.App. 2016). Defendants' remaining objections are not persuasive for the same reasons the court rejected them with respect to the federal conspiracy claim.

Count IV

In Count IV, plaintiff asserts assault, aiding and abetting an assault, and intentional infliction of emotional distress claims against defendants Jonita Pauls Jacks, Joey Pauls,

Renita Pauls, Kenny Meier and Patsy Meier.  Defendants do not address the sufficiency of the allegations supporting these claims.  Instead, they urge the court to dismiss them on the basis that plaintiff has failed to state a federal claim and that the court should decline to exercise supplemental jurisdiction over the state law claims.   As the court has concluded the federal claims are sufficient to avoid dismissal, there is no basis for dismissing the state law claims on the indicated basis.

One issue remains to be addressed – the request of defendants Almaguer and Robertson for qualified immunity. Qualified immunity shields government officials from liability unless the plaintiff shows that "both that a constitutional violation occurred and that the constitutional right was clearly established at the time of the alleged violation." Green v. Post, 574 F.3d 1294,1299 (10th Cir. 2009) (internal quotation marks omitted). The court concludes plaintiff has made a sufficient showing as to both elements, particularly since defendants have merely recited the law generally applicable to qualified immunity claims, without attempting to apply those principles to the claims asserted here. On the present showing, dismissal at this point based on qualified immunity is not warranted.

Accordingly, the motion to dismiss of defendants Jonita Pauls Jacks, Joel Pauls, Renita Pauls, Meradith Norris, Kenny Meier and Patsy Meier [Doc. #24] is **DENIED**.  The motions to dismiss of defendants Almaguer and Robertson [Doc. #22] and defendant Edsall [Doc. #23] are **GRANTED** with respect to plaintiff's state law conspiracy claims asserted against defendants Almaguer and Edsall in their official capacities. Otherwise, those motions are also **DENIED**.

**IT IS SO ORDERED**.

Dated this 28th day of December, 2017.


_____
JOE HEATON
CHIEF U.S. DISTRICT JUDGE