## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

RANDY GAMEL-MEDLER,  )
)
        Plaintiff,  )
)
vs.  )        NO. CIV-17-0830-HE
)
JONITA PAULS a/k/a JONITA JACKS,  )
*et al.*,  )
)
        Defendants.  )

## <u>ORDER</u>

In this case, plaintiff Randy Gamel-Medler asserts claims against various residents of Hitchcock, Oklahoma, and against the Blaine County sheriff and undersheriff. He also asserts claims against Blaine County.[1] The claims addressed in this order are those against Sheriff Tony Almaguer, Undersheriff David Robertson, and Blaine County.

Plaintiff asserts a § 1983 claim against these defendants on the basis that they denied him equal protection of the law, due to his sexual orientation and/or the race of his son, by refusing to accept formal complaints from plaintiff as to actions of others directed at plaintiff and his son. He further asserts the refusal to accept formal complaints, and these defendants' pursuit of criminal charges against plaintiff, were in retaliation for his exercise of his First Amendment free speech rights. Plaintiff asserts a conspiracy claim under 42 U.S.C. § 1985(3) against these defendants and others, contending they conspired with

---

[1] *Sheriff Almaguer is sued both in his individual and official capacities. Any claim against the sheriff in his official capacity is, in substance, a claim against Blaine County. See* <u>Lopez v. LeMaster</u>, *172 F.3d 756, 762 (10th Cir. 1999).*

others to deny him equal protection of the law.  Plaintiff also asserts civil conspiracy claims against Almaguer, Robertson and certain other defendants based on Oklahoma state law.[2]

Sheriff Almaguer and Undersheriff Robertson have moved for summary judgment as to plaintiff's claims against them, including the official capacity claim against Blaine County.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a).  "A genuine dispute as to a material fact exists when the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party." Carter v. Pathfinder Energy Servs., Inc., 662 F.3d 1134, 1141 (10th Cir. 2011) (quotations and citation omitted).

<u>Background</u>

At least some of the background facts and circumstances of this case are undisputed. Plaintiff, a gay man with an adopted African American son, moved to the Town of Hitchcock in September of 2016.  Shortly after his arrival, he got involved in local politics by attending the town's Board of Trustee meetings.  Various of his opinions and comments at the meetings were controversial and triggered disagreements with other town residents. The disagreements apparently got sufficiently heated at times that someone suggested to the sheriff's department that it monitor the meetings, and, on occasion, a deputy did attend.

---

[2] *The complaint indicates the state law claim is not asserted against the county.*

However, despite the disagreements, in early 2017, plaintiff was selected by the Board of Trustees to be the Town Clerk.

Apparently in his capacity as Town Clerk, plaintiff received a complaint from another resident contending that defendants Jonita, Joel, and Renita Pauls had placed a trailer home on a public right of way, blocking or at least complicating access to nearby property. Plaintiff's evidence is that, when he went to the location to investigate on May 7, 2017, he had a contentious encounter, first with defendant Jonita Pauls and later with her parents, defendants Joel and Renita Pauls. The specifics of their interactions are disputed, but it is clear they were contentious. A deputy sheriff later arrived, along with defendant Rick Edsall, the mayor of Hitchcock, who had apparently been called by Joel Pauls. Plaintiff's evidence is that he sought to file a formal complaint against Jonita Pauls, but that neither the deputy present at the time, nor the sheriff the next day, would accept a formal complaint based on Paul's anti-gay and racist comments. Plaintiff's evidence is that the sheriff and a deputy told him Paul's comments were "free speech."

Another incident happened a week later, on May 14, 2017. It appears to be undisputed that plaintiff had placed a nuisance notice of some sort on property owned by defendant Kenny Meier's mother and that, in response, Meier replaced that notice with a sign which read: "Hay you QUEER $500 fine for treasspassing [sic]." Plaintiff did not see the sign before it was taken down, but he indicates that this was the basis for one of the complaints he sought to file against Meier.

Plaintiff's evidence is that the following day Meier confronted Dan Humphreys, a friend of plaintiff's who had been shadowing him as he mowed public rights of way. Meier

allegedly asked Humphreys "Are you queer?", apparently believing Humphreys to be plaintiff's husband.  Humphreys called 911.   Undersheriff Robertson arrived, as did Mayor Edsall, and the situation was apparently defused.  No police reports were taken at that time. Humphreys' testimony is that he later went to the sheriff's office and completed a complaint form, however, no written reports about the incident have been found. Plaintiff contends that he also went to the Sheriff's Office to file a complaint against Meier, but that Robertson refused to take the report.

A few days later, plaintiff's home was destroyed by fire.  There is evidence that, at various times, plaintiff had contended that others in town would try to burn his house down and that he was very agitated on the night of the fire because of his belief that had occurred.[3] It appears undisputed that emergency personnel at the scene contacted the sheriff's office and requested a law enforcement presence in light of plaintiff's conduct and statements that night.   After an investigation by the sheriff's office, plaintiff was later charged with misdemeanor charges of threatening to perform an act of violence, based on plaintiff's conduct the night of the fire and on his earlier confrontation with Jonita Pauls.   Following proceedings in state district court at which plaintiff was represented by counsel, plaintiff was bound over for trial on both charges.  The charges were later amended to disturbing the peace in both cases and plaintiff pled *nolo contendere* to the amended charges.

---

[3] *There is also evidence which would arguably support an inference that plaintiff set the fire himself, but no party seeks to resolve that question in the present context.  The court views the cause of the fire as undetermined.*

As noted above, plaintiff has asserted §1983 claims against the moving defendants, as well as a § 1985 conspiracy claim and a state civil conspiracy claim.[4]

## Section 1983 - Equal Protection Claim

To prevail on a claim brought pursuant to § 1983, a plaintiff must prove (1) the deprivation of a federal right by (2) a person acting under color of state law.  Watson v. City of Kansas City, Kan., 857 F.2d 690, 694 (10th Cir. 1988).  It is undisputed that, at all times pertinent to the present dispute, the moving defendants were acting under color of state law.

The failure to "provide police protection is subject to the equal protection clause under section 1983."  *Id.*  There is no general constitutional right to police protection, but an equal protection claim can arise from a failure to protect if a plaintiff establishes that (1) he is a member of a protected class; (2) he was treated differently from similarly situated individuals who were not members of the protected class; and (3) the officers' failure to protect was motivated — at least in part — by  a discriminatory purpose.  *Id.*; *see, also*, Starr v. Downs, 271 Fed. Appx. 746, 748 (10th Cir. 2008) (citing United States v. Armstrong, 517 U.S. 456, 465 (1996)).  "To comport with the Equal Protection Clause, the law cannot be administered 'with an evil eye and an unequal hand.'"  Eckert v. Town of Silverthorne, 25 Fed. Appx. 679, 684 (10th Cir. 2001) (quoting Yick Wo v. Hopkins, 118

---

[4] *The amended complaint nominally alleges a single §1983 claim, but there appear to be, in substance, two § 1983 claims:  one based on 14th Amendment equal protection principles and one for First Amendment retaliation.*

5

U.S. 356, 373 (1886)).  Further, "an invidious discriminatory purpose may often be inferred from the totality of the relevant facts."  <u>Washington v. Davis</u>, 426 U.S. 229, 242 (1976).

Defendants dispute whether plaintiff was a member of a protected class, on the basis that he is white and that sexual preference is not a protected category.  However, in the equal protection context, an associational link to someone in a protected category — here, plaintiff has an African American son — is sufficient.  <u>Phelps v. Wichita Eagle-Beacon</u>, 886 F.2d 1262, 1269 (10th Cir. 1989) (equal protection claim based on racial animus may be based on association).  Likewise, the failure to provide equal police protection based on sexual orientation can be the basis for an Equal Protection claim.  <u>Price-Cornelison v. Brooks</u>, 524 F.3d 1103, 1114 (10th Cir. 2008) (noting defendant "has not asserted . . . a rational reason to provide less protection to lesbian victims of domestic violence than to heterosexual domestic violence victims.").  The court concludes plaintiff has presented evidence sufficient to show a genuine dispute as to this element of his claims.

The court also concludes plaintiff has presented evidence sufficient to create a justiciable question as to whether he was treated differently from other persons similarly situated.  He has offered evidence that these defendants declined to allow him to file a formal report or complaint as to various of the alleged incidents to which he objected, suggesting they were unwilling to pursue his complaints.   There is also evidence that the defendants took (and sought) written reports from others who were arguably similarly situated, specifically the complaints/reports received from Ms. Paul, a participant in one of the same incidents.   While the evidence falls far short of clearly establishing differential

treatment, the court is obliged in this context to view the evidence in the light most favorable to the plaintiff and concludes he has made a sufficient showing as to this element.

Finally, the court concludes plaintiff has presented sufficient evidence — barely — to create a justiciable question as to whether these defendants' actions were motivated by a discriminatory purpose.  To be sure, there is ample evidence of discriminatory and extraordinarily derogatory comments and conduct, based on racial and sexual preference animus, by other defendants.  But the potential liability of each defendant must be evaluated separately, so the question is whether there is sufficient evidence to support a reasonable inference that these defendants' actions were motivated by racial or sexual preference animus.  There is nothing in the submissions which even approaches direct evidence of such animus.  However, discriminatory purpose must commonly be established by circumstantial, rather than direct, evidence.  Further, as noted above, the court is obliged in resolving a summary judgment motion to view the evidence in the light most favorable to the non-moving party.

Giving plaintiff the full benefit of the referenced standard, the court concludes the cumulative effect of all the circumstantial evidence in the case is just sufficient to create a justiciable question as to whether these defendants declined to take and pursue plaintiff's complaints due to discriminatory animus.[5]  That evidence includes the evidence of multiple

---

[5] *There is also ample evidence from which a factfinder might reach a different conclusion: that law enforcement was faced with an impossible situation in the Town of Hitchcock, being forced to sort through recurring conflicts between a new town resident looking for a fight and belligerent, long-time locals happy to oblige.  However, the question for present purposes is not whether there are other inferences or conclusions which might be drawn from the evidence, but*

refusals to accept complaints from plaintiff while accepting complaints, in arguably similar circumstances, from others not gay or not having the racial association bond. There is also evidence of the sheriff's and undersheriff's awareness of the unpopularity of plaintiff on grounds that were, as to some members of the public, based on matters or race and sexual preference. There is evidence of adverse comments by the undersheriff to others adversely commenting on plaintiff. Finally, the claimed refusal of the defendants to take a complaint, on the basis of the challenged conduct of Ms. Pauls being free speech, arguably supports the necessary inference.[6]

In sum, the court concludes a justiciable controversy exists as to whether these defendants violated plaintiff's equal protection rights. Having reached that conclusion, the question then becomes whether defendants' reliance on the doctrine of qualified immunity shields them from plaintiff's claims. "The doctrine of qualified immunity shields public officials . . . from damages unless their conduct was unreasonable in light of clearly established law." Elder v. Holloway, 510 U.S. 510, 512 (1994). To rebut defendants' qualified immunity defense, plaintiff must show "(1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citation omitted). At the summary judgment stage, the court "must grant qualified immunity unless the plaintiff

---

*whether there is a permissible inference from it which would support plaintiff's claim.*

*[6] The alleged comments of Ms. Pauls were directed to plaintiff's son, were explicitly racial in nature, and arguably included threats of violence against him. As such, they arguably go beyond the scope of protected free speech.*

can show (1) a reasonable jury could find facts supporting a violation of a constitutional right, which (2) was clearly established at the time of defendant's conduct." Estate of Booker v. Gomez, 745 F.3d 405, 411 (10th Cir. 2014) (citation omitted). Either part of the test may be considered first. *Id.* at 412.

As discussed above, the court has concluded a justiciable question exists as to whether plaintiff's equal protection rights were violated. With respect to the "clearly established" element, defendants concede the general principle that individuals are entitled to equal protection from class-based discrimination but argues that no case clearly established the application of those principles to the circumstances present here. Plaintiff responds that Price-Cornelison and other cases do so.

There is no clear guidance in the cases as to exactly what level of specificity the prior guidance must have, other than to be sufficient to put a reasonable officer on notice that his or her challenged conduct violates the pertinent right. Here, however, the court concludes Price-Cornelison sufficiently established the necessary principle and in circumstances close enough to those involved in this case to put the officers on notice. It established that an equal protection violation may be based on providing less police protection due to the plaintiff's sexual orientation. It also involved, in part, a refusal to accept a formal complaint. The same principle is even more clearly established as to discrimination based on race which, unlike sexual orientation, is a suspect classification. S*ee* DeShaney v. Winnebago Cnty. Dep't of Soc. Serv., 489 U.S. 189 (1989). In light of these and other cases, the court concludes the parameters of the pertinent constitutional rights were sufficiently established at the time of Almaguer and Robertson's alleged

conduct in this case.  They are therefore not entitled to summary judgment on the basis of qualified immunity.

The motions will be denied as to the Equal Protection claims against the sheriff and undersheriff.  Further, as Sheriff Almaguer was a decision-maker for Blaine County, the same conclusion follows as to the claim against Blaine County.

### Section 1983 - First Amendment Retaliation Claim

To establish a § 1983 First Amendment retaliation claim, a plaintiff must prove (1) that he "was engaged in a constitutionally protected activity;" (2) that defendant's actions caused "an injury that would chill a person of ordinary firmness from continuing to engage in that activity;" and (3) that defendant's action was "substantially motivated" by plaintiff's exercise of his First Amendment rights.  Becker v. Kroll, 494 F.3d 904, 925 (10th Cir. 2007) (citation omitted).  To support a retaliatory prosecution claim, plaintiff "must also plead and prove the absence of probable cause for the prosecution."  Id.  "[A]ny form of official retaliation for exercising one's freedom of speech, including prosecution, threatened prosecution, bad faith investigation, and legal harassment, constitutes an infringement of that freedom."  Worrell v. Henry, 219 F.3d 1197, 1212 (10th Cir. 2000) (quotations and citation omitted).

The parties' briefing of the First Amendment issue is sparse, and it appears multiple issues may exist which are not squarely addressed by the parties.  But as plaintiff correctly notes, he has no duty to address elements essentially conceded by the defendants for summary judgment purposes.  Instead, both parties have focused their attention on the principle noted in Worrell — that where a First Amendment retaliation claim is based on

criminal prosecution, the plaintiff must establish the absence of probable cause supporting the charges.

As defendants note, it is undisputed that plaintiff was bound over for trial on the two charges during preliminary proceedings in the state case.   Under Oklahoma law and procedure, a court's decision to "bind over" a defendant constitutes a determination that probable cause exists to support the alleged offense.   Christopher v. Circle K Convenience Stores, Inc., 937 P.2d 77, 79 (Okla. 1997) ("A finding of probable cause is inherent in an order binding over a defendant for trial.").   Defendants' submissions indicate plaintiff was represented by counsel in the state proceedings and nothing appears here to suggest plaintiff did not have a full and fair opportunity to raise any issues as to probable cause there.   As a result, principles of issue preclusion bind plaintiff here on the issue of whether probable cause was or was not present — it was.   See Park Lake Res. Ltd. Liab. v. U. S. Dept. of Agriculture, 378 F.3d 1132, 1136 (10th Cir. 2004).   It is therefore unnecessary to address plaintiff's other arguments as to probable cause, which might have mattered in the absence of the prior judicial determination.

To the extent that plaintiff alleges retaliation by defendant's alleged refusal to accept formal written complaints at various times,[7] the court concludes the evidence is insufficient to create a justiciable issue as to whether that conduct, if it occurred, was due to plaintiff's comments on matters of public concern.   As discussed above, the circumstantial evidence

---

[7] *As noted above, the parties' briefs focus entirely on the criminal charges as the retaliatory conduct.*

potentially supports an inference of unequal treatment based on race/gender preference, but the evidence does not suggest the same result as to the First Amendment claim.  Plaintiff's evidence in that regard does not go beyond speculation.

The motions will be granted as to the First Amendment retaliation claims.

Section 1985(3) and State Law Conspiracy Claims

To establish a conspiracy in violation of the first clause of § 1985(3), plaintiff must prove "(1) a conspiracy; (2) to deprive the plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom." Tilton v. Richardson, 6 F.3d 683, 686 (10th Cir. 1993) (citing Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971).  "A conspiracy is not for the purpose of denying equal protection simply because it has an effect upon a protected right.  The right must be aimed at, its impairment must be a conscious objective of the enterprise." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 275 (1993) (quotations and citations omitted).  Section 1985(3) applies only to conspiracies motivated by some racial or class-based invidiously discriminatory animus.  Tilton 6 F.3d at 686.  For this reason, a First amendment retaliation claim premised on "the claim of racial bias brings into play § 1985(3) as well." Martinez v. Winner, 771 F.2d 424, 440 (10th Cir. 1985).

"A conspiracy requires the combination of two or more persons acting in concert." Salehpoor v. Shahinpoor, 358 F.3d 782, 789 (10th Cir. 2004).  "A plaintiff . . . need not prove that each participant in a conspiracy knew the exact limits of the illegal plan" because "[a]n express agreement among all conspirators is not a necessary element of a civil conspiracy." Snell v. Tunnell, 920 F.2d 673, 702 (10th Cir. 1990).  At a minimum, the

12

plaintiff must show that there was a single plan whose essential nature and general scope were known to each person alleged to have engaged in the conspiracy. *Id.* "Frequently, a conspiracy must be proven with circumstantial evidence because rarely will there be direct evidence of an express agreement among all the conspirators to conspire." *Id.* at 703. "[T]here must be substantial proof of circumstances from which it reasonably follows, or at least may be reasonably inferred, that the conspiracy existed." World Wide Ass'n of Specialty Programs v. Pure, Inc., 450 F.3d 1132, 1141 (10th Cir. 2006). "Conjecture and speculation alone are not sufficient to establish that [a] conspiracy existed." *Id.*

As noted above, the court has concluded the evidence potentially supports an inference that Almaguer and Robertson violated plaintiff's equal protection rights by declining to take and pursue his complaints, due to racial animus. Whether there was, in addition, an agreement or conspiracy to do so for purposes of §1985(3), is not precisely the same question.

The evidence that these defendants conspired or had an agreement to violate plaintiff's rights is just as thin as the evidence of discriminatory animus. It is not sufficient to show an agreement or conspiracy with the other defendants, whose conduct and comments (if plaintiff's version of events is believed) were plainly based on racial and sexual preference animus. However, there is evidence sufficient to support an inference of agreement between Almaguer and Robertson. Plaintiff asserts that is enough, and defendants have not responded to that specific argument. In the absence of any argument on the point from defendants, and given the Tenth Circuit's view that the intra-corporate conspiracy doctrine is not applicable in civil rights cases, there is no apparent reason why

plaintiff is not correct.  Brever v. Rockwell Intern. Corp., 40 F.3d 1119, 1127 (10th Cir. 1994).  Therefore, the court concludes plaintiff's evidence is sufficient — barely — to create a justiciable controversy as to whether Almaguer and Robertson conspired with each other to violate plaintiff's rights, within the meaning of § 1985(3).

On the present showing, there is no basis for reaching any different conclusion as to the state law conspiracy claims against Almaguer and Robertson.

The court concludes defendants' motions should be denied as to the conspiracy claims.

Conclusion

For the reasons stated, the motions of defendants Almaguer, Robertson and Blaine County [Doc. Nos. 120 & 121] are **GRANTED in PART** and **DENIED in PART**.  The motions are granted as to plaintiff's § 1983 claims for First Amendment retaliation.  The motions are denied as to the remaining claims.

This case will be set for trial on the court's October 2019 trial docket.  A revised scheduling order consistent with that setting will be entered separately.

**IT IS SO ORDERED**.

Dated this 1st day of August, 2019.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE